## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| AMEN EL, PHARAOH EL-FOREVER LEFT-I, | Case No. 20-CV-1327 (DSD/ECW) |
| Plaintiff, | |
| v. | **ORDER AND** |
| | **REPORT AND RECOMMENDATION** |
| PAUL SCHNELL et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Pharaoh El-Forever Left-i Amen

El's (1) Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 7

("IFP Application")); (2) Amended Complaint (Dkt. 12); (3) Supplemental Attachment to

Amended Complaint (Dkt. 15 ("Supplement")); and (4) Motion for Equity Injunction,

Preliminary Injunction, and TRO (Dkt. 36 ("February 2020 Injunction Motion")).[1]  For

the following reasons, the Court orders Amen El to file a second amended complaint

consistent with the directions given below, denies the Supplement's motion to amend the

---

[1]     Amen El's birth name is Desean Lamont Thomas.  As discussed below, he had his name changed in April 2018.  (*See, e.g.*, Dkt. 12 at 6.)  Certain claims in this action hinge on whether it was proper for corrections officials to refer to Plaintiff with his birth name after this name change.  (*See, e.g.*, *id.* at 6-8.)  In what follows, the Court refers to Plaintiff as "Amen El" rather than as "Thomas," as that is how Plaintiff refers to himself in this action's pleadings.  This is without prejudice to any arguments Defendants may make in the future about how properly to refer to Plaintiff (if, as discussed more below, Amen El's name-change allegations are part of this case going forward).

Amended Complaint, grants the IFP Application, and recommends denying the February 2020 Injunction Motion without prejudice.

## I.      BACKGROUND

Amen El, presently a prisoner at Minnesota Correctional Facility-Stillwater ("MCF-Stillwater"), filed this action's original Complaint on June 8, 2020.  (*See* Dkt. 1 at 1; Dkt. 36-3 at 1 (showing current address).)  He filed the IFP Application on August 6, 2020.  (*See* Dkt. 7 at 1.)  On September 2, 2020, this Court ordered Amen El to pay a $56.49 initial partial filing fee, failing which the Court would recommend dismissing this action without prejudice.  (*See* Dkt. 9 at 5.)  In the same Order, the Court noted problems with the Complaint and suggested that, "[g]iven these concerns—and others that may arise during screening—Amen El should give careful thought to whether he wants to proceed with this action in its present form."  (*Id.* at 4 n.2.)

On September 18, 2020, Amen El asked the Court for an extension to pay the initial partial filing fee, so that he could, among other things, "[a]mend the complaint before screening."  (Dkt. 10 at 1.)  The Court granted that extension on October 9, 2020. (*See* Dkt. 11 at 1-2.)  Four days later, the Court received the Amended Complaint.  (*See* Dkt. 12 at 1.)  The Court will discuss this pleading's allegations in some detail below— for present purposes, however, the key point is that the Amended Complaint (like the original one) did not concern the effect of COVID-19 on Amen El's confinement.  (*See id.* at 6-16; Dkt. 1 at 3-11.)

On November 3, 2020, the Court received numerous documents from Amen El. These included the Supplement, which purports to amend the Amended Complaint to add

a "COVID-19 claim."  (Dkt. 15 at 1 (capitalization amended).)  Amen El also filed a

"Motion for Ex Parte Order to Show Cause and Emergency Hearing" asking the Court to

"show cause why" it should not impose various forms of injunctive relief on Defendants.

(Dkt. 13 at 1, 4 ("November 2020 Motion").)  Three days later, Amen El paid his initial

partial filing fee.  (*See* Dkt. 16.)

After reviewing the November 2020 Motion, the Court construed it as requesting a

preliminary injunction and recommended denying it.  (*See* Dkt. 23 at 1.)  Amen El

responded with objections as well as a separate motion for a temporary restraining order

("TRO").  (*See* Dkt. 27; Dkt. 31.)  This Court issued another report and recommendation

in January 2021, recommending denial of the new TRO motion.  (*See* Dkt. 33 at 4.)

Faced with that recommendation, Amen El filed an additional "objection" and the

February 2020 Injunction Motion.[2]  (*See* Dkt. 35, 36.)  Asking for an "equity injunction,"

a preliminary injunction, and a TRO, this is Amen El's third distinct request for

injunctive relief in three months.  (*See* Dkt. 36.)

## II.   ANALYSIS

### A.   Amended Complaint and Supplement

#### 1.   Joinder Overview

After reviewing the Amended Complaint and Supplement, the Court sees

numerous problems of misjoinder.  These affect both the Amended Complaint itself and

the Supplement when treated as an amendment to the Amended Complaint.  In what

---

[2]      Amen El captions the document at Dkt. 35 as an objection, but the document
appears to ask the Court to "dismiss the [TRO motion without] prejudice."  (Dkt. 35 at 1.)

follows, the Court will lay out applicable joinder principles, apply them to the Amended

Complaint and Supplement, then instruct Amen El to file a second amended complaint.

Under Federal Rule of Civil Procedure 18(a), "[a] party asserting a claim . . . may

join, as independent or alternative claims, as many claims as it has against an opposing

party." This rule is permissive, letting a plaintiff "join as many claims as he or she has

against an opposing party." *Headley v. Bacon*, 828 F.2d 1272, 1275 (8th Cir. 1987); *see

also* 6A Mary Kay Kane, Federal Practice and Procedure § 1582 (3d ed. Westlaw,

updated October 2020) ("Rule 18(a) . . . permit[s] a party to join as many original

claims . . . as the party has against an opposing party.").

But once an action joins multiple defendants, Rule 20(a)(2) comes into play.

Under Rule 20(a)(2), "[p]ersons . . . may be joined in one action as defendants if (A) any

right to relief is asserted against them jointly, severally, or in the alternative with respect

to or arising out of the same transaction, occurrence, or series of transactions or

occurrences; and (B) any question of law or fact common to all defendants will arise in

the action." *See, e.g.*, *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010)

(quoting Rule 20(a)(2)). As a leading treatise puts the point, "[d]espite the broad

language of Rule 18(a), [a] plaintiff may join multiple defendants in a single action only

if [the] plaintiff asserts at least one claim to relief against each of them that arises out of

the same transaction or occurrence and presents questions of law or fact common to all."

7 Federal Practice & Procedure § 1655; *see also, e.g.*, *George v. Smith*, 507 F.3d 605, 607

(7th Cir. 2007) ("[M]ultiple claims against a single party are fine, but Claim A against

4

Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated

claims against different defendants belong in different suits . . . .").

Rule 20(a)(2) is particularly important in prisoner litigation.  Funneling unrelated

defendants into different actions prevents the "morass produced by multi-claim, multi-

defendant suits . . . ."  *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (quoting

*George*, 507 F.3d at 607 (internal quotation marks omitted)); *see also Blevins v. Pearson*,

No. 18-CV-2270 (DSD/DTS), 2018 WL 6814183, at *2 (D. Minn. Nov. 30, 2018)

(quoting *Owens*), *R&R adopted*, 2018 WL 6807391 (D. Minn. Dec. 27, 2018).

Furthermore, under the Prison Litigation Reform Act ("PLRA"), prisoners must pay

filing fees for all civil actions, and can only file a certain number of meritless lawsuits (or

appeals) before being generally barred from seeking *in forma pauperis* status.  *See* 28

U.S.C. § 1915(b)(1), (g).  The upshot is that a prisoner who might otherwise have to pay

multiple filing fees for multiple lawsuits might try to avoid that outcome by combining

unrelated claims against unrelated defendants into a single action.  *See Owens*, 635 F.3d

at 952; *Blevins*, 2018 WL 6814183, at *2 (quoting *Owens*).

### 2.     Joinder in the Amended Complaint

With these principles in place, the Court turns to the Amended Complaint.[3]  It

names as Defendants two Minnesota counties (Washington County and Chisago County);

---

[3]     Under Federal Rule of Civil Procedure 15(a)(1), as relevant here, "[a] party may
amend its pleading once as a matter of course within . . . 21 days after service of a
responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or
(f) . . . ."  Defendants have not filed an answer or responsive pleading yet, so when Amen
El filed the Amended Complaint, he could amend his pleading "as a matter of course."

an unnamed "CEO or [h]igh [o]fficer" of Centurion Managed Care, LLC (though not

Centurion itself); eleven named individuals; the Minnesota Department of Corrections

("MNDOC"); and the State of Minnesota.  (Dkt. 12 at 1.)

The Amended Complaint brings four claims.

- First, Amen El posits a "religious name claim." (*Id.* at 6.)  He
  alleges here that a Minnesota state court granted him a name change
  in April 2018, and that his new name reflects his religious interests
  and beliefs.  (*See id.* at 6-7.)  Since then, he contends, he has
  repeatedly asked certain Defendants to let him use his name
  "separately or in conjunction [with] his committed name . . . ." (*Id.*
  at 7.)  He further claims that MNDOC policy on "Offender Names"
  has an "unconstitutional and inequitable impact on [his] religious
  expression, expression, and international [treaty] rights."[4] (*Id.* at 7-8
  (capitalization amended).)  Defendants named in this claim include
  MNDOC, Washington County, Schnell, and Reiser.[5] (*See id.*)

- Second, Amen El claims that MNDOC officials have retaliated
  against him in several ways based on a civil-rights lawsuit he filed in
  state court in Chisago County.  (*See id.* at 9-11; *see also* Register of
  Actions, *Amen El v. Titus*, No. 13-CV-18-441 (Minn. Dist. Ct.).)[6]

---

The Amended Complaint thus replaces Amen El's original Complaint as this action's
operative pleading.

[4]    While it is not entirely clear, Amen El may also be seeking relief for this claim
under the Religious Land Use and Institutionalized Persons Act.  (*See* Dkt. 12 at 2.)

[5]    Amen El lists Collin Gau as a defendant involved in this claim, but does not
include Gau in the Amended Complaint's caption.  (*Compare id.* at 2, *with id.* at 8.)
Amen El also refers to conduct by "others," using a footnote to suggest that "others" here
refers to "Washington County, et al." (*Id.* at 8 & n.1.)  This use of "et al." is improper; a
complaint must specify which defendants are targets of each claim.  The Court has
therefore ignored Amen El's use of "et al." here and in other Defendant lists in the
Amended Complaint.

[6]    The dockets from Amen El's state-court actions are not attached to any materials
provided to the Court in the present action.  But they are publicly accessible online, and
this Court may take judicial notice of such public court records. *See, e.g.*, *Graham v.
U.S. Marshal*, No. 20-CV-1204 (WMW/LIB), 2020 WL 4060731, at *1 n.1 (D. Minn.

Amen El alleges that because of his suit, MNDOC officials and employees have—among other things—(1) complained to him about the suit, (2) "expelled" him from "the library, law library and college classes"; (3) "suspended" him from "typing legal motions" related to the Chisago County suit "on computers"; (4) transferred him from Minnesota Correctional Facility-Rush City to MCF-Stillwater to try to moot claims in the state lawsuit; and (5) "raid[ed]" Amen El's cell and "destroyed legal documents." (*Id.* at 9-10.)  Amen El claims that the conduct here violates the First and Fourteenth Amendments. (*See id.* at 10.)  Defendants named in this claim apparently include Rasmussen, Quist, Schnell, Janssen, MNDOC, and Washington County.  (*See id.* at 9-10.)

- Third, Amen El presents allegations about treatment for "chronic low back pain."  (*Id.* at 11.)  As the Court understands this claim, Amen El alleges that after a doctor diagnosed him with "radiculopathy a/k/a sciatica," Defendants Plackner and Quiram "discontinued" his prescribed treatment.  (*Id.*)  Quiram then diagnosed Amen El with certain "degenerative disease[s]"— apparently distinct from sciatica— and certain unidentified "Physician Defendants" prescribed Amen El treatments for those conditions.  (*Id.*)  These treatments "began to have positive effects." (*See id.*)  Amen El seems to allege that at some point, certain unidentified "Centurion defendants and physicians" became aware the Amen El was using information he obtained from his physician appointments in filings in a "medical malpractice / civil rights 8th Amendment lawsuit."[7]  (*Id.*; *see also* Register of Actions, *Amen El v. Centurion Managed Care, LLC*, No. 82-CV-19-5268 (Minn. Dist. Ct.).)  When this happened, he contends, these individuals "suspended all treatments prescribed for the degenerative diseases w/o informing [Amen El]," and "DOC defendants" began to force Amen El to pay for his own over-the-counter medications.  (*Id.* at 12.)  Amen El claims that this violated ethical standards governing the physician/client relationship, and also claims that a similarly situated prisoner was treated differently.  (*See id.*)  He contends that Defendants' conduct here comprised First Amendment retaliation

---

June 29, 2020) (citing *Bellino v. Grinde*, No. 18-CV-1013, 2019 WL 368398, at *1 n.1 (D. Minn. Jan. 30, 2019)), *R&R adopted*, 2020 WL 4059889 (D. Minn. July 20, 2020).

[7]     As the case numbers cited in the text reflect, the lawsuit referred to here is distinct from the lawsuit discussed as part of Amen El's second claim. (*See, e.g.*, Dkt. 12 at 3 (noting both suits).)

and violated his rights under the Fourteenth Amendment's Equal
Protection Clause.  (*See id.* at 14.)  Defendants involved in this claim
include Plackner, Quiram, Massoglia, Larson, MNDOC, and the
State of Minnesota.  (*See id.*)

- Amen El's fourth claim refers back to each of the two lawsuits
mentioned in his prior claims.  (*See id.* at 3, 14.)  Broadly speaking,
Amen El asserts that his complaints "were dismissed not because
they were frivolous, but because [he] couldn't afford appropriate
resources to prosecute his cases."  (*Id.* at 15.)  Citing "educational
and economical disparities between blacks and whites" in
Minnesota, Amen El claims these disparities "cause[] statistical,
implied and express discrimination in relation to equal access to the
judicial system in the state of Minnesota and its political
subdivisions."  (*Id.* (capitalization amended).)  He further asserts that
"[t]he lack of [t]raining, improper training or failure to act, in
regards to racial reconciliation and or a failure to challenge racial
implied or express disparaging is inequitable and unconstitutional."
(*Id.*)  Amen El claims that Defendants' conduct here violates his
"right to access the court" under the First and Fourteenth
Amendments, and his right "to not be discriminated against" under
the Fifth and Fourteenth Amendments.  (*Id.* at 16.)  Defendants at
issue here include Washington County, Chisago County, and the
State of Minnesota.  (*See id.*)

This discussion shows that the Amended Complaint contains several distinct sets

of claims, each involving different subject matters.  Under Rule 18(a), this could be

acceptable if Amen El had named only one defendant and that defendant was truly

involved in all four sets of claims.  But Amen El names multiple defendants, so the

Amended Complaint must also comply with Rule 20(a)(2).  In its present form, it plainly

does not.  In Rule 20 terms, Amen El has not asserted rights to relief against each

Defendant that all arise from the same "transaction, occurrence, or series of transactions

or occurrences."

As a result, the Amended Complaint presents just the sort of "morass" that Rule 20(a)(2) is designed to prevent. Furthermore, letting Amen El bring (for practical purposes) four actions in one would let him avoid three filings for which he should face PLRA-related requirements (e.g., filing fees). The Court therefore concludes that the Amended Complaint suffers from misjoinder, and cannot proceed in its present form.

### 3.    Joinder in the Supplement

As discussed above, the Supplement seeks to add to the Amended Complaint an entirely new subject—Amen El's concerns about contracting COVID-19 because of conditions at MCF-Stillwater. Once a party amends a pleading under Rule 15(a)(1), a party can make additional amendments "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). There is no written consent from Defendants here, so leave from this Court is necessary; courts "should freely give leave when justice so requires." *Id.* In this case, the Court denies the Supplement's implicit motion to amend. Justice does not require permitting Amen El's proposed amendment, because incorporating the Supplement into the Amended Complaint would simply exacerbate that pleading's misjoinder problems.

In his "COVID-19 claim," Amen El alleges that in October 2020, he was released from medical quarantine in MCF-Stillwater. (Dkt. 15 at 1.) He asked to remain in quarantine, but officials denied this request. (*See id.*) Officials ordered Amen El into a cell "infested with COVID-19" because its previous inhabitant had "had a positive test"; various possessions of that inmate had been left in the room, including "hygiene items" and moldy, half-consumed food. (*Id.* at 1-2.) Amen El asked for cleaning supplies and to

be placed in another cell—other unoccupied cells allegedly existed—but officials denied

these requests as well. (*See id.* at 2.)  Furthermore, Amen El requested the ability to

order "a more efficient face mask"; officials denied his request but allegedly let similarly

situated inmates purchase such masks. (*Id.*)

As part of his COVID-19 claim, Amen El asserts that Defendants Schnell, Bosch,

Quist, the State of Minnesota, and the MNDOC—as well as two new Defendants, a "Jane

Doe" and Centurion Managed Care, LLC, itself—are exposing him to the risk of

contracting COVID-19.[8]  (*Id.* at 3.)  He claims that these Defendants' "actions or

inactions" are infringing on his rights under the Eighth and Fourteenth Amendments (as

well as an "international right to life") by causing him "injury . . . or possible injury."

(*Id.* at 3-4.)

From a joinder perspective, the Supplement adds problems to an Amended

Complaint already replete with them.  The Supplement's contents do not overlap with

any subjects in the Amended Complaint, and seek to sweep in two new defendants as

well.  Granting the Supplement's implicit motion to amend would turn this action into a

morass of five subject matters rather than four, and is no more permissible under Rule

20(a)(2) than the Amended Complaint itself is.  The Court therefore denies the

Supplement's request to amend the Amended Complaint.

---

[8]      The Amended Complaint does not name any "Jane Doe" defendants.  (*See* Dkt. 12
at 1.)  It does refer to an unnamed "CEO or high officer" of Centurion Managed Care,
LLC, but nowhere refers to this person as "Jane Doe."  Furthermore, the Amended
Complaint also does not name Centurion Managed Care, LLC, itself as a defendant.  (*See*
*id.*)

### 4.    Second Amended Complaint

The Court considers how to resolve these joinder concerns.  Because Amen El is proceeding pro se, the Court will give him an opportunity to file a Second Amended Complaint.  In this pleading, Amen El needs to pick the one transaction or occurrence (or series of transactions or occurrences) that he wishes to pursue in this action, and limit the facts and allegations to the defendants involved in that transaction, occurrence, or series.  Similarly, Amen El should only include claims that arise out of the relevant transaction, occurrence, or series—in other words, claims that are related to each other.  *See* Fed. R. Civ. P. 20(a)(2).[9]  If Amen El wishes to bring suits against multiple defendants based on more than one set of events, then he will need to bring additional suits and accept the PLRA-related consequences of those filings.

The Court will give Amen El 30 days from this Order's date to file the Second Amended Complaint.  If he fails to file a Second Amended Complaint within this timeframe, the Court will recommend dismissing this action without prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b).

### B.    IFP Application

Following Amen El's payment of this action's initial partial filing fee, the Court grants the IFP Application.  The Court will refrain from entering any orders concerning service of summons and complaints on Defendants until it has reviewed Amen El's Second Amended Complaint.

---

[9]    Alternatively, Amen El may choose to select one defendant and set forth as many claims as he has against that defendant.  *See* Fed. R. Civ. P. 18(a).

11

C.      **February 2020 Injunction Motion**

Finally, the Court turns to the February 2020 Injunction Motion.  That motion

seeks certain injunctive relief specifically addressing Amen El's COVID-related

concerns.  (*See, e.g.*, Dkt. 36-1 at 17-18.)  The propriety of this relief depends on this

action's scope.  If Amen El elects to have the Second Amended Complaint feature his

COVID-related claims, then it would be appropriate for the Court to address a request for

related injunctive relief.  But if the Second Amended Complaint focuses on different

claims, then injunctive relief keyed to irrelevant COVID-related concerns will not be

appropriate.  *See, e.g.*, *Walmart Inc. v. Cuker Interactive, LLC*, 949 F.3d 1101, 1112 (8th

Cir. 2020) ("An injunction must not be broader than necessary to remedy the underlying

wrong."  (quoting *Gerlich v. Leath*, 861 F.3d 697, 710 (8th Cir. 2017) (internal quotation

marks and citation omitted)); *Hager v. Washington Cty.*, No. 19-CV-2809 (JRT/DTS),

2020 WL 6106271, at *5 (D. Minn. May 4, 2020) (quoting *Walmart*), *R&R adopted*,

2020 WL 4671660 (D. Minn. Aug. 12, 2020).

Given this issue, the Court recommends denying the February 2020 Injunction

Motion without prejudice.  If the Second Amended Complaint focuses on Amen El's

COVID-related claims, he may refile a similar motion for the Court's consideration.

### III.    ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT**

**IS HEREBY ORDERED THAT**:

> 1.      Plaintiff Pharaoh El-Forever Left-I Amen El's must file a Second
>         Amended Complaint within 30 days of this Order's date that
>         complies with the discussion above.  If Amen El fails to submit a

Second Amended Complaint, then this Court will recommend dismissing this action without prejudice or failure to prosecute under Federal Rule of Civil Procedure 41(b).

2. Amen El's Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 7) is **GRANTED**.[10]

3. Amen El's Supplemental Attachment to Amended Complaint (Dkt. 15), construed as a motion to amend the Amended Complaint (Dkt. 12), is **DENIED**.

## IV. RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Plaintiff Pharaoh El-Forever Left-i Amen El's Motion for Equity Injunction, Preliminary Injunction, and TRO (Dkt. 36) be **DENIED** without prejudice.

Dated: February 11, 2021

*s/Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

---

[10]    The Court will not order any service of summons or complaints until it reviews the Second Amended Complaint.